Atlas Fence Company, complainant-respondent,

*v.*

West Ridgelawn Cemetery and others, defendants-respondents, and Passaic National Bank and Trust Company, defendant-appellant.

[Argued October 22d, 1935. Decided January 31st, 1936.]

*Messrs. Corbin & Harty (Mr. William A. Sumner,* of counsel), for the appellant.

*Mr. Louis A. Fast,* for the Atlas Fence Company, respondent.

*Messrs. Carey & Lane,* for Albert W. Bonynge and William Bittles, respondents.

PER CURIAM.

The bill filed in this suit charges that the West Ridgelawn Cemetery is insolvent and has been mismanaged by the trustees, and prays that the trustees for the cemetery be compelled to account for all moneys received, and that a receiver be appointed. The decree appealed from relates only to a counter-claim filed by the Passaic National Bank and Trust Company, the present appellant, as trustee for certain certificate holders. The counter-claim prays that the cemetery be decreed to account for all moneys received by it from the sale of its land, and to pay to the trustee the amounts found due on account of the perpetual care fund and dividend fund, and as compensation for services of the trustee, in accordance with the provisions of the declaration of trust and the covenants contained in a deed given by the Trust Company to the cemetery; and further, that it be decreed that the trustee is entitled to a vendor's lien, and that such lien is prior to all judgments and other liens, excepting the one created by the mortgage held by one William Bittles.

The vice-chancellor found the facts to be as follows: In 1906 one Herbert B. Gruber conveyed to the Trust Company

a large tract of land. The Trust Company, by an instrument of even date, declared that the land was held by it in trust, and that it would convey same to the West Ridgelawn Cemetery, an incorporated association, upon certain conditions, viz: "First, that the land would be used for cemetery purposes; second, that the association would pay monthly to the Trust Company, as consideration therefor, part of the proceeds of the sale of cemetery lots, namely, (1) such sums as the association should deem necessary to set aside for a perpetual care fund, but not less than six cents per square foot of land sold for burial purposes; 'said perpetual care fund shall be paid over by the West Ridgelawn Cemetery to the Passaic Trust and Safe Deposit Company and shall be invested together with income therefrom by the said Passaic Trust and Safe Deposit Company;' (2) one-half of the balance of the proceeds of the sale of lots; (3) all moneys remaining after the deduction of expenses, &c., of the association. Third, that the proceeds of sale of lots should be divided by the association into thirteen thousand five hundred shares, to represent which the association should issue negotiable certificates in a form set forth in the declaration of trust. Fourth, that the association should pay to the Trust Company reasonable compensation for its services from time to time." The Trust Company further declared that on receiving the certificates from the cemetery it would assign the same to such persons as Gruber might direct and that the trustee quarter-annually would pay dividends to the shareholders providing it had on hand sufficient to pay at least fifty cents a share.

On January 3d, 1907, the Trust Company conveyed the land to the Cemetery Association upon the conditions mentioned in the declaration of trust. The deed to the cemetery contained a covenant by the grantor that the property was not encumbered by any liens except certain mortgages made by Gruber. The form of certificate set forth in the deed as well as in the declaration of trust, is a joint certificate of the West Ridgelawn Cemetery and the East Ridgelawn Cemetery.

Upon the conveyance of the land to it, the association proceeded to lay out the premises and dedicated the same as a

cemetery and has sold lots therein for burial purposes. The association, however, has never made any payment to the Trust Company, or rendered any monthly or other statement of its receipts or disbursements as required by the provisions of the deed.

The vice-chancellor concluded, with respect to the claim for compensation for services of the trustee, that "the services of the Trust Company mentioned in the deed are obviously thereafter to be performed over a period of years during the continuance of the trusteeship. Complainant cannot have a vendor's lien for the stipulated compensation for these services, since the compensation is not part of the consideration for the conveyance. In this regard at least, complainant stands as an ordinary creditor." He also held that the direct beneficiary of the perpetual care fund, if any money had actually been paid into said fund, was the cemetery association itself.

The vice-chancellor further concluded that the terms of the trust requiring payment by the cemetery to the Trust Company for the benefit of the certificate holders, of half the purchase price of burial lots to be sold by the cemetery, were void, for the reasons set forth in the opinion of the court of chancery in the case of *East Ridgelawn Cemetery* v. *Frank,* 77 *N. J. Eq. 36,* as well as in an opinion filed in the same case on an amended bill. *104 Atl. Rep. 594.* He also held that chapter 272 of the laws of 1913, relied upon by the Trust Company to sustain its demands, was ineffective to create or validate the obligations of the cemetery which the appellant seeks to enforce.

The vice-chancellor also concluded that there was no merit in the contention of the appellant that the validity of the plan for distribution of the purchase price of lots was *res adjudicata* by reason of the decree of the court of chancery, in a cause between William Bittles, complainant, and the West Ridgelawn Cemetery et al., defendants, *94 N. J. Eq. 808,* and held that neither the first or supplemental decree of the Bittles case precluded the West Ridgelawn Cemetery, its lot holders or creditors, from attacking the validity of the provisions of the trust, but found that the Trust Company is now entitled

to receive the fair value of the estate conveyed to the Cemetery Association at the time of the conveyance, with interest, but without priority over other creditors, as the certificate holders had lost their right to a vendor's lien by reason of laches, because the counter-claim was not filed until twenty-five years after the conveyance to the cemetery, and therefore could not claim priority over creditors whose claims had arisen during that period.

We concur in the conclusions of the vice-chancellor and the decree appealed from will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, LLOYD, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, JJ.   11.

*For reversal*—None.